UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNE M. MALOOF,

                Plaintiff,

v.                                    5:12-CV-0636
                                    (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,[1]

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

OLINSKY LAW GROUP              TANISHA T. BRAMWELL, ESQ.
  Counsel for Plaintiff              HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        JOANNE JACKSON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Anne M. Maloof

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings.

_____

[1]      Plaintiff's complaint named Michael J. Astrue, as the Commissioner of Social
Security, as the defendant.  On February 14, 2013, Carolyn W. Colvin took office as Acting
Social Security Commissioner.  She has therefore been substituted as the named defendant in this
matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is
required in order to effectuate this change.  *See* 42 U.S.C. § 405(g).

(Dkt. Nos. 11, 12.)  For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on April 26, 1959.  Plaintiff has completed a high school level of education, having obtained a General Equivalency Diploma.  She has most recently worked in food service.  Prior to that, Plaintiff worked in medical billing/collections and as a certified nurse's aide.  Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease (COPD), arthritis of the neck, high blood pressure, left elbow lateral epicondylitis and back pain.  Her alleged disability onset date is October 10, 2008, and her date last insured is March 31, 2009.

### B.    Procedural History

On April 19, 2010, Plaintiff applied for Social Security Disability Insurance.  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On June 28, 2011, Plaintiff appeared before the ALJ, F. Patrick Flanagan.  (T. 18-54.)  The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on August 30, 2011.  (T. 5-18.)  On February 15, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 12-17.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (T. 12.)  Second, the ALJ found that, during the

relevant time period, Plaintiff's COPD and history of left elbow lateral epicondylitis were severe impairments, but that Plaintiff's neck pain with radiculopathy, back pain and high blood pressure were not severe. (T. 12-13.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13-14.) The ALJ considered listings 1.02B and 3.02. (*Id.*) Fourth, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, which is consistent with the ability to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (T. 14-16.) Fifth, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (T. 16.) Sixth, and finally, the ALJ determined that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (T. 17.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to find Plaintiff's cervical radiculopathy severe. (Dkt. No. 11 at 9-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence and is legally erroneous because (1) the ALJ failed to properly weigh the opinions of Dr. Croglio and Nurse Kirshner, (2) the ALJ failed to re-contact Plaintiff's treating physician to obtain an assessment of Plaintiff's functional limitations, and (3) the ALJ failed to conduct a function-by-function analysis. (*Id.* at 11-19.) Third, Plaintiff argues that the ALJ failed to apply the proper legal standards in assessing

Plaintiff's credibility.  (*Id*. at 19-21.)  Fourth, and finally, Plaintiff argues that the ALJ's determination at step five of the sequential analysis is unsupported by substantial evidence and legally erroneous because the ALJ failed to obtain expert vocational testimony, as was warranted due to Plaintiff's non-extertional impairment.  (*Id.* at 21-22.)

       **B.**     **Defendant's Arguments**

In response, Defendant makes four arguments.  First, Defendant argues that the ALJ properly determined the severity of Plaintiff's impairments.  (Dkt. No. 12 at 4-6 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ's RFC determination is supported by substantial evidence.  (*Id.* at 6-11.)  Third, Defendant argues that the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 11-13.)  Fourth, and finally, Defendant argues that the ALJ properly concluded that Plaintiff could perform other work.  (*Id.* at 13-15.)

**III.**    **RELEVANT LEGAL STANDARD**

       **A.**     **Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work. Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform. Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.     ANALYSIS

### A.     Whether the ALJ Erred in Failing to Find Plaintiff's Cervical Radiculopathy Severe

After carefully considering the matter, the Court answers this question in the affirmative,

in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 9-11 [Pl.'s

Mem. of Law].) The Court would only add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of

impairments is not severe if it does not significantly limit a [claimant's] physical or mental

ability to do basic work activities." 20 C.F.R. § 404.1521(a). The standard for a finding of

severity under the second step of the sequential analysis has been found to be de minimis, and is

intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013

WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d

Cir.1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of his condition. *See* 20 C.F.R. § 404.1512(a); *Bowen*, 482 U .S. at 146.

Here, the ALJ found that Plaintiff's COPD and history of left elbow lateral epicondylitis are severe impairments, but that Plaintiff has failed to establish that, prior to her date last insured, her neck pain with radiculopathy, back pain and high blood pressure were severe. Plaintiff argues that the ALJ erred in failing to find that her cervical radiculopathy is a severe impairment. According to Plaintiff, the record reflects that her cervical radiculopathy caused her more than minimal functional limitations since at least January 2008, citing her January 17, 2008 complaint to her then treating physician, Dr. Martin Waldron, M.D., that she had tingling and stiffness in her fingers and toes and her April 16, 2008 complaint that the pain in her left shoulder was worsening. (T. 321-322.) In addition, Plaintiff cites the results of a chest x-ray performed on April 15, 2009 and an x-ray of her cervical spine performed on May 19, 2009, as well as treatment notes from a nurse at the Poverello Health Center on May 13, 2009.

A chest x-ray, which was performed after Plaintiff presented to the emergency room with chest pain, revealed that Plaintiff has a left curvature of her thoracic spine but that her lung volumes were normal, her lungs were grossly clear and her heart size was normal. (T. 232.) On May 13, 2009, Nurse Practitioner Patricia Kirshner recorded that Plaintiff presented with a one-month history of cervical radiculopathy and complaints of pain, numbness and tingling down her left arm. (T. 214.) On exam, Nurse Kirshner noted, Plaintiff had pain with any movement of her neck and with a shoulder shrug, but good shoulder range of motion. (*Id.*) Nurse Kirshner recommended a cervical spine x-ray to rule out pathology and a nerve conduction study of Plaintiff's left arm. The results of the cervical spine x-ray, performed on May 19, 2009, show

7

that there is degenerative disc disease at C5-6 and C6-7.  (T. 210.)  The results of a nerve

conduction study, performed one month later,  were normal.  (T. 215.)

Defendant argues that Plaintiff was not diagnosed with cervical radiculopathy until after

March 31, 2009, which is the date that Plaintiff was last insured.  Moreover, Defendant argues,

the record is devoid of any findings of a single limitation caused by the alleged impairment

during the relevant time period, which is between October 10, 2008, Plaintiff's disability onset

date, and her date last insured.  In any event, Defendant points out that Dr. Waldron's notes

merely reflect Plaintiff's complaints and contain no clinical findings, and that the nerve

conduction study, performed after Plaintiff was last inured, was normal.  Defendant further

argues that Nurse Kirshner's report in May 2009 that Plaintiff has a one-month history of

cervical radiculopathy belies any contention that Plaintiff had such an impairment prior to her

date last insured.

Defendant's argument that the lack of medical evidence in the relevant period requires

the conclusion that Plaintiff's cervical radiculopathy was not a severe impairment during that

period is dubious.  To be sure, courts are entitled to rely on the absence of medical evidence to

find that a claimant's failure to seek medical treatment undermines her claim of total disability.

*See Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (citing *Arnone v. Bowen*, 882 F. 2d 34,

39 (2d Cir. 1989.)).  However, where there is evidence of the severity of an impairment during

the period shortly after the relevant time period, such evidence strongly supports a conclusion

that the very same impairment was disabling during the relevant time period.  *See Reyes v.*

*Barnhart*, 226 F. Supp. 2d 523, 530 (S.D.N.Y. 2002).  Moreover, the ALJ should consider any

explanation for the failure to seek treatment, such as a lack of health insurance, when deciding

what, if any, inference to make regarding the lack of treatment.  *See Kennerson v. Astrue*, No.

10-CV-6591, 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012).

Here, there is evidence in the record of Plaintiff's reports of pain, coupled with the clinical finding of degenerative disc disease in her cervical spine, less than two months after Plaintiff's date last insured.  Moreover, there is evidence of Plaintiff's complaints of shoulder and neck pain prior to Plaintiff's onset date.  In addition, Plaintiff testified that she did not seek treatment during the relevant period due to a lack of health insurance.  (T. 25.)  Accordingly, an inference could be made that during the relevant period, Plaintiff's cervical radiculopathy significantly limited Plaintiff's ability to do basic working activities, including lifting.  *See* 20 C.F.R. § 404.1521(b)(1).  Therefore, considering the de minimis standard for a finding of severity, it was error for the ALJ to conclude that Plaintiff's cervical radiculopathy is not severe based solely on the lack of medical evidence during the relevant time period.

To be sure, where as here "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis."  *Chavis v. Astrue*, No. 07–CV–0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010).  *See also* 20 C.F.R. § 404.1523 (ALJ required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").  Here, the ALJ did not deny benefits based on the lack of a severe impairment.  However, the ALJ did not consider Plaintiff's cervical radiculopathy in the reminder of his decision.  Because the ALJ was required to considered all of Plaintiff's impairments after step two of the sequential analysis, even those that are not severe, *see* 20 C.F.R. § 404.1523, the ALJ's failure to consider whether Plaintiff's cervical radiculopathy was severe in the first instance is not harmless error.  *Cf. Ellis v. Comm'r of Soc. Sec.*, No. 11–CV–2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012).  Therefore, remand is necessary so that the ALJ may consider whether Plaintiff's cervical radiculopathy was severe and record his reasoning in accordance with this Decision and Order.

**B.    Whether the ALJ Properly Weighed the Opinions of Dr. Croglio and Nurse Kirshner**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 11 at 11-16 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.  *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).  Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134.

Opinions from medical sources that are not considered acceptable medical sources, such as nurse practitioners,[2] are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009).  The Regulations provide that the Secretary will consider, "evidence

---

[2]    A nurse practitioner is not an "acceptable medical source[]" who can provide evidence to establish an impairment.  *See* 20 C.F.R. § 404.1513.

from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e).  In weighing the opinions of "other sources", the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(c).  *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010).

Here, the ALJ gave limited weight to the opinions of Dr. Victor Croglio, M.D., Plaintiff's treating physician and Pamela Kirshner, Plaintiff's treating nurse practitioner.  (T. 14-15.)  On December 22, 2010, Dr. Croglio and Nurse Kirshner completed a physical abilities questionnaire as well as a pulmonary RFC questionnaire regarding Plaintiff.  (T.237-244.)  Dr. Croglio and Nurse Kirshner opined that Plaintiff can lift less than five pounds, stand and/or walk less than 20 minutes, and can sit less than six hours in an 8-hour workday with periodic alternate sitting and standing to relieve pain or discomfort due to weakness in her upper extremities.  (T. 237-238.)  Dr. Croglio and Nurse Kirshner also opined that Plaintiff "has cervical radiculopathy with constant pain which limits her ability to climb stairs, balance, kneel, crouch, crawl, or sto[o]p."  (T. 238.)  They further opined that, because Plaintiff  "has pain constantly running down her left arm," she is limited in handling, fingering, feeling, and reaching in all directions.  (T. 239.)

On the pulmonary RFC questionnaire, Dr. Croglio and Nurse Kirshner reported that Plaintiff was diagnosed as suffering from moderate COPD and emphysema.  (T. 241-244.)  Dr. Croglio and Nurse Kirshner noted that Plaintiff's symptoms include shortness of breath, wheezing, episodic acute bronchitis, fatigue, and coughing.  (T 241.)  They further opined that Plaintiff's symptoms are severe enough to constantly interfere with the attention and concentration needed to perform even simple tasks.  (*Id.*)  Further, Dr. Croglio and Nurse Kirshner opined that Plaintiff can sit and stand/walk less than two hours during an 8-hour

working shift and that she should avoid all exposure to environmental hazards such as extreme heat, extreme cold, high humidity, wetness, dust, chemicals, and other irritants.  (T. 243-244.)

The ALJ found that the opinions of Dr. Croglio and Nurse Kirshner "are not well supported by the existence of positive clinical and laboratory findings prior to the date last insured[,]" and therefore are given little weight.  (T. 14.)  In addition, the ALJ found that the treatment notes from Dr. Croglio and Nurse Kirshner after the date last insured also do not support their assessment, citing an October 2010 emergency room treatment note reflecting that, on Plaintiff's presentation with symptoms of a urinary tract infection, she reported no shortness of breath and on examination, her lung sounds were clear except for a few scattered ronchi and expiratory wheezes on her left lung.  (T. 15, 282-284.)  Finally, the ALJ noted that although Dr. Croglio and Nurse Kirshner opined that Plaintiff's limitations are due to back pain and cervical radiculopathy, Plaintiff has not established that those impairments were severe prior to her date last insured.  (T. 15.)

Here, the ALJ noted that Dr. Croglio and Nurse Kirshner ultimately assessed that Plaintiff's alleged functional limitations were caused by her back pain and cervical radiculopathy.  Because Plaintiff failed to establish that she experienced a severe back or neck impairment prior to her date last insured, Defendant argues, it was reasonable for the ALJ to assign little weight to the opinion of Dr. Croglio and Nurse Kirshner.

"[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (quoting *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir.1991)).  Here, Dr. Croglio and Nurse Kirshner do not specify a time period for their opinion regarding Plaintiff's limitations or

diagnoses.[3]  Therefore, the ALJ had an affirmative duty to re-contact Dr. Croglio before

assigning little weight to his opinion.  *See Bender v. Astrue*, No. 09-CV-880, 2010 WL 5175023,

at *6 (N.D.N.Y. Nov. 29, 2010), *accepted by* 2010 WL 5175006 (N.D.N.Y. Dec. 15, 2010)

(noting that ALJ erred in failing to re-contact treating physician before assigning little weight to

his opinion, where the physician began treating the plaintiff three months after her date last

insured and where he did not specify a time period for plaintiff's limitations).

        Accordingly, remand is necessary so that, after the ALJ revisits his decision regarding the

severity of Plaintiff's cervical radiculopathy during the relevant period, if necessary, the ALJ

may further develop the record and sufficiently explain the weight assigned to the opinions of

Dr. Croglio and Nurse Kirshner in accordance with this Decision and Order.

### C.    Whether the ALJ Erred in Failing to Obtain a Functional Assessment From Plaintiff's Treating Physician

        After carefully considering the matter, the Court answers this question in the affirmative,

in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 11 at 16-18 [Pl.'s

Mem. of Law].)  The Court would only add the following analysis.

        The ALJ has an affirmative duty to develop the record.  *See Moran v. Astrue*, 569 F.3d

108, 112 (2nd Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security

ALJ... must on behalf of all claimants ... affirmatively develop the record...." (quoting *Lamay v.

Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir.2009)) (internal quotation mark omitted)).

---

        [3]    Defendant argues that Nurse Kirshner's report in May 2009 that Plaintiff has a
one-month history of cervical radiculopathy belies any contention that Plaintiff had such an
impairment prior to her date last insured.  Considering the degenerative nature of Plaintiff's
impairment, and that Plaintiff's date last insured was only six weeks prior to Nurse Kirshner's
report, the Court finds that this argument carries little weight.  At the very least, the ALJ was
required to address the issue by re-contacting Nurse Kirshner and Dr. Croglio for a retrospective
opinion of Plaintiff's functional limitation.

This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding." *Id.* (quoting *Lamay*, 562 F.3d at 509).  Re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record.  *See* 20 C.F.R. § 404.1512(e).  Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  *See* 20 C.F.R. § 404.1512(e)(1); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir.1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998).

Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing.  *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)).  However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete.  Where the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913[4] and there is no indication that further contact will result in additional information, re-contact is not necessary.  *See Hluska v. Astrue*, No. 06–CV–0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

Here, the ALJ noted that "[t]here is no functional assessment for the period at issue" and that "the only treatment notes dealing with the period at issue stems from Dr. Waldron's office." (T. 14.)  However, the records from Dr. Waldron's office do not include a functional assessment

---

[4]       Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

and the ALJ failed to re-contact Dr. Waldron to obtain one.  Defendant asserts that the ALJ twice attempted to contact Dr. Waldron in May 2010 to no avail.  To be sure, at the June 2011 hearing, Plaintiff's counsel stated that "we do now have Dr. Waldron's records."  (T. 22.)  Considering that those records lack any statement about what the Plaintiff can still do despite her impairments, and that the record is devoid of a functional assessment of Plaintiff for the relevant period, it was error for the ALJ to fail to re-contact Dr. Waldron to obtain such an assessment.

Accordingly, remand is necessary so that the ALJ can further develop the record by obtaining a functional assessment from Dr. Waldron.

### D.    Whether the ALJ Erred in Failing to Conduct a Function-By-Function Analysis

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 11 at 18-19 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

An ALJ's RFC assessment must include a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis, including physical abilities, mental abilities, and any environmental limitations.  *See Wood v. Comm'r of Soc. Sec*., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009).  With regard to physical limitations, this means the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch.  *See* 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  With regard to mental limitations, the ALJ must make a function-by-function assessment of the claimant's ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting.  *See* 20 C.F.R. § 404.1513(c)(2).  Once the

function-by- function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy. *See Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

Other circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. *See Desmond v. Astrue*, No. 11-CV-0818, 2012 WL 6648625, at *5 (Dec. 20, 2012) (citing *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir.2003); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir.2002); *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir.2000)).  The Court of Appeals for the Second Circuit is silent on the issue, however, and district courts within the Second Circuit have reached conflicting conclusions.  *See Desmond*, 2012 WL 6648625, at *6 (citing *Wood*, 2009 WL 1362971, at *6; *McMullen v. Astrue*, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug.18, 2008); *Brown* v. *Barnhart*, No. 01-CV-2962, 2002 WL 603044, at *5–7 (E.D.N.Y. Apr.15, 2002); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y.2005); *Casino-Ortiz v. Astrue*, No. 06-CV-155, 2007 WL 2745704, at *13 (S.D.N.Y. Sept.21, 2007); *Novak v. Astrue*, No. 07-CV-8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008); *Martin v. Astrue*, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008).

Many courts have found that, "in limited circumstances, the ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment." *Desmond*, 2012 WL 6648625, at *6 (citing *Duvergel v. Apfel*, No. 99-CV-4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); *Walzer v. Chater*, 93-CV- 6240, 1995 WL 791963 at *9 (S.D.N.Y.

Sept.26, 1995)).  Where the ALJ's rationale can be gleaned from his decision and the RFC determination is, ultimately, supported by substantial evidence, the failure to provide a function-by-function analysis is harmless.  *See id.*

Here, the ALJ failed to conduct a function-by-function analysis of Plaintiff's limitations. Defendant argues that the ALJ clearly stated that Plaintiff is capable of performing the full range of light work, and therefore has necessarily concluded that Plaintiff is capable of performing each of the functions at the light work level.  Alternatively, Defendant argues, because the ALJ noted the Plaintiff's medical records and functional assessments during the relevant time period in adequately explaining his RFC finding, any failure to conduct a function-by-function analysis is harmless.

Because, as explained in Parts IV.A through C of this Decision and Order, the ALJ's RFC analysis is not supported by substantial evidence, his failure to conduct a function-by-function analysis is not harmless error.  Therefore, remand is necessary so that the ALJ may revisit his RFC analysis in accordance with this Decision and Order, including by conducting a function-by-function analysis of Plaintiff's limitations.

### E.       Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 11 at 19-21 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without

question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Moreover, a ruling issued by the Commissioner provides that an "adjudicator must not draw any inferences about an individual's symptoms and functional effects from a failure to seek out or pursue medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Kennerson v. Astrue*, No. 10-CV-6591, 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012) (citing SSR 96–7p, 1996 WL 374186, at *2 (S.S.A. 1996)).

Here, the ALJ acknowledged Plaintiff's allegations of neck pain that radiates to her extremities and interferes with her ability to lift and/or carry objects, but noted that Plaintiff has not established that she had a back or next disorder prior to her date last insured.  (T. 15.)  The ALJ further noted that, prior to the date last insured, Plaintiff maintained a reasonable activity level, relying on her May 2010 function report.  (T. 16, 141-148.)  In addition, the ALJ noted that, during an October 2010 emergency room visit, Plaintiff reported that she cares for her grandchildren, which "is just about a full time job," and that she is very busy and active.  (T. 282.)  The ALJ acknowledged that these reported activities occurred after Plaintiff's date last insured, but noted that "it is reasonable to conclude that given the lack of medical treatment during the period at issue, she was capable of performing at least these activities, if not more." (T. 16.)  Accordingly, the ALJ concluded, Plaintiff's subjective complaints are only partially credible.

To be sure, while the ALJ noted that Plaintiff reported that she could attend to her personal needs, prepare meals, clean, do laundry, drive, go for walks, go out alone, go grocery shopping, read, watch television, play cards, exercise, play with her children, socialize with friends and attend church weekly, he failed to note Plaintiff's qualification of many of those activities.  For example, Plaintiff reported that (1) she could go for walks "but I don't get to[o] far[;]" (2) she has to take breaks in between chores due to her breathing issues and shoulder pain; (3) she needs help with folding the laundry; (4) she has to rest in the middle of her shower; (5) she has to sit down while dressing; (6) her husband helps her with dinner because the pans are heavy; and (7) her husband usually does all the shopping, but if she goes with him she has to find places to sit and rest.  (T. 141-148.)  Moreover, the ALJ failed to address Plaintiff's explanation that she did not seek medical treatment during the relevant period due to a lack of health

19

insurance, not because she did not need treatment.  (T. 25.)  In addition, the ALJ's credibility analysis was tainted by his finding that Plaintiff's cervical radiculopathy is not a severe impairment.

For these reasons, remand is necessary so that the ALJ may properly assess Plaintiff's credibility in accordance with the regulations and in the context of a fully developed record.

**F.**    **Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 11 at 21-22 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform.  Instead, the ALJ decided, relying solely on the Medical-Vocational guidelines, that there are jobs in the national economy that Plaintiff can perform, without giving consideration to Plaintiff's environmental limitations.

Plaintiff argues that due to the existence of environmental limitations, which are considered non-exertional, the ALJ should have obtained the opinion of a vocational expert. Defendant argues that, even if the ALJ found that Plaintiff has environmental limitations, which he did not, the existence of a non-exertional limitation does not mandate the use of a vocational expert.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform her past work, there is other work which she could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids."  *See Baldwin v. Astrue*, No. 07-

CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).  However, when a plaintiff

suffers from significant non-exertional limitations that significantly limit her employment

opportunities, exclusive reliance on the Grids is inappropriate.  *See Baldwin*, 2009 WL 4931363,

at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)).  "A plaintiff's range of potential

employment is significantly limited when he suffers from the 'additional loss of work capacity

beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of

work as to deprive him of a meaningful employment opportunity.'"  *Id.* (quoting *Bapp*, 802 F.2d

at 606).

Here, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

perform the full range of light work, without any reference to the environmental limitations

contained in the assessments of Dr. Croglio and Nurse Kirshner.  To be sure, even if the ALJ did

find that Plaintiff had such limitations, it is important to note that "the mere existence of a non-

exertional impairment does not automatically preclude reliance on the guidelines."  *Zabala v.

Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Social Security Ruling 85-15 provides some guidance regarding the effect of the

existence of environmental limitations on the issue of whether a vocational expert is required.

According to SSR 85-15, "[w]here a person has a medical restriction to avoid excessive amounts

of noise, dust, etc., the impact on the broad world of work would be minimal because most job

environments do not involve great noise, amounts of dust, etc."  SSR 85-15, 1985 WL 56857, at

*8.  However, the ruling further explains that "[w]here the environmental restriction falls

between very little and excessive, resolution of the issue will generally require consultation of

occupational reference materials or the services of a [vocational expert]."  *Id*.  Where, as here,

the claimant has a non-exertional limitation to avoid all environmental irritants, SSR 85-15

21

would require "consultation of occupational reference materials or the services of a [vocational expert]." *Thomas v. Astrue*, No. 11-CV-589, 2012 WL 5364275, at *7 (N.D.N.Y. Sept. 19, 2012), accepted by 2012 WL 5364272 (N.D.N.Y. Oct 30. 2012) (quoting SSR 85-15).

Because remand in necessary so that the ALJ may, among other things, revisit the weight assigned to the opinion of Dr. Croglio and Nurse Kirshner, remand is also necessary so that the ALJ may revisit his decision at step five of the sequential analysis after having reevaluated his RFC analysis.  Should the ALJ credit the opinion that Plaintiff's limitations include avoiding environmental irritants, consideration must be given to SSR 85-15.

        **ACCORDINGLY**, it is

        **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

        **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

        **ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 11, 2013
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

22